WILLIAM G. SIBERT, APPELLANT, V. CITY OF OMAHA, A METROPOLITAN CITY, ET AL., APPELLEES.

267 N. W. 2d 753

Filed July 19, 1978. No. 41542.

Thomas F. Dowd, for appellant.

Herbert M. Fitle, Omaha City Attorney, and James E. Fellows, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. J.

Plaintiff was employed as a semiskilled laborer with the sewer maintenance division of the public works department of the City of Omaha. On December 17, 1976, plaintiff received notice that his

employment with the city would be terminated, effective December 20, 1976, for the reason that he was unable to perform the duties in his classification and the inability of the city to find any other position which he could perform. Plaintiff appealed to the personnel board of the City of Omaha which upheld his discharge. Appeal was taken to the District Court which affirmed the decision of the personnel board. Plaintiff appeals. We affirm the judgment of the District Court.

"It is well settled in Nebraska that where it appears in an error proceeding that an administrative tribunal has acted within its jurisdiction and for that type of proceeding some competent evidence sustains its findings and order, the order of the administrative agency will be affirmed." Shepherd v. City of Omaha, 194 Neb. 813, 235 N. W. 2d 873 (1975). See, also, Tinsley v. City of Omaha, 190 Neb. 380, 208 N. W. 2d 693 (1973).

The sole question on appeal is whether there was competent evidence before the personnel board to sustain its decision to terminate plaintiff's employment with the city.

Plaintiff began employment with the city on June 6, 1972. Plaintiff testified that from that time up until he was discharged, he received regular and routine merit and promotional increases. During the summer of 1976, plaintiff took an examination for the position of Foreman I, and was advised by the city that he was ranked first on a listing of 20 eligible for promotion to that position. Plaintiff testified that he was never criticized in his ability to perform the duties of his position; that he never received any reprimands; and that he has never been unable to perform the physical tasks of his position.

On October 11, 1976, plaintiff sustained an accident while on the job and felt pain in his back. He was subsequently examined by Dr. Reichstadt who informed him that he had a low back strain. Plaintiff

was released to go back to work and returned to work on October 28, 1976. Subsequently, plaintiff called Mr. Murphy in the personnel department and told him that he was still experiencing some difficulty with his back and was concerned, and requested permission to see an orthopedic specialist to confirm Dr. Reichstadt's diagnosis that he had only a back strain. On November 12, 1976, plaintiff was examined by Dr. Iwersen, who took some X-rays and administered a number of tests. Dr. Iwersen advised plaintiff to get a lower lumbar support, which plaintiff did. In a report dated November 12, 1976, Dr. Iwersen stated: "I have prescribed a lumbo-sacral support for this man and told him to return back to work. However this man has a history of four back injuries, and I am sure he will probably have another back strain sometime while at work. I advised him that he probably should seek easier work if this is going to continue, but he did not feel that this would solve his problem."

In a report dated December 13, 1976, which was obtained as a clarification of the first report, Dr. Iwersen wrote: "It is my opinion that this patient is going to continue with his heavy work, and will probably continue to have back difficulties. From what I understand, he is now doing heavy work, and I feel that even though there would be a reduction in pay that he would be much better off doing lighter work, or else seeking another type of job."

On December 15, 1976, plaintiff experienced pain in his shoulder while at work. He went to the hospital and was examined by Dr. Reichstadt and Dr. Ewing. Dr. Reichstadt released plaintiff and told him to return to work on Monday, December 20, 1976.

The letter from the city, advising plaintiff of his discharge, is dated December 17, 1976. The letter quotes the above-cited portion of Dr. Iwersen's December 13 report and stated: "Upon receiving this

report, it is evident that you are unable to perform the duties in your classification * * *."

James R. Belina, plaintiff's supervisor and one of the signers of this letter, testified that he participated in the discussions which led to plaintiff's termination and that the decision was based upon plaintiff's past record and Dr. Iwersen's report.

Plaintiff acknowledged that prior to October 11, 1976, he had on-the-job injuries related to his back. The record indicates that during the period he was with the city plaintiff had 13 injuries. Not all these injuries were referable to his back. At least three were, however. James R. Belina testified that the efficiency of the department drops when people are absent due to injuries.

Plaintiff testified he feels that he is currently able to perform the duties of his job. He further testified that since he was terminated, he has shoveled snow, played basketball, and jogged without difficulty. A further report from Dr. Iwersen dated December 27, 1976, was solicited by plaintiff, in which Dr. Iwersen stated: "It was only on account of the history of previous back injuries and trouble that I suggested that he try lighter work. I feel that this patient is *probably* capable of returning to his regular job and suggested that he wear this support when he does his regular work." (Emphasis supplied.)

There is ample evidence to support the decision of the city to terminate plaintiff's employment. Plaintiff's position is one which necessitates heavy lifting and other strenuous activity. Plaintiff has suffered repeated back-related injuries during the course of his employment with the city. These injuries caused plaintiff to be absent from work. Plaintiff's supervisor testified that the efficiency of his department is reduced by such absenteeism. Dr. Iwersen concluded that plaintiff would very likely sustain future injuries to his back if he continued in his position. He was advised to seek lighter work. Plaintiff has

shown no inclination to do so, but maintained that despite his past record of injuries and Dr. Iwersen's diagnosis, he has no performance problems in this position. Dr. Iwersen's report of December 27 does not negate his previous long-range diagnosis that plaintiff would continue to sustain back injuries if he remained in this position. The city is not required to maintain the employment, in a given position, of an individual about whom it can be said with reasonable certainty that such individual will likely sustain repeated injury if continued in that position.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.

WHITE, C. THOMAS, J., dissenting.

I do not quarrel with the majority opinion in its recitation of the standard of review in administrative hearings on petition in error in this court. The majority correctly cites the applicable standard. The basis of the termination of plaintiff in the notification given to him by the City of Omaha was the letter of Dr. Iwersen. The effectiveness of this letter as a ground for a termination is certainly modified, if not destroyed, by the further letter of Dr. Iwersen of December 27, 1976: "* * * I feel that this patient is probably capable of returning to his regular job and suggested that he wear this support when he does his regular work."

However, the decision to terminate was not in fact based solely on Dr. Iwersen's first letter. The testimony of James R. Belina, sewer maintenance engineer for the City of Omaha, is illustrative of this point. "Q. Was your recommendation that he be terminated on the basis of the report of Dr. Iwerson of November 12th? A. Partly. What we did was to do his total record along with the letter received from Dr. Iwersen." It is apparent that the personnel board had before it the total record of the employee's injuries, absences, and medical history.

The record was referred to by members of the personnel board in their questioning of the plaintiff, was used as justification for his ultimate discharge, but that previous record was never *specified as a reason for discharge in the original discharge letter, nor ever offered or received in evidence.* We are thus placed in the position where the majority proposes to affirm a decision based on evidence which was never offered or received.

This court's high regard for the findings of administrative agencies, when they are based on some competent evidence, does not require us to affirm the decision of an agency which is at least in part, and to an unknown part, based on evidence which has not been offered or received, yet considered by it, and unavailable for review in this court.

In a case cited by the majority, Shepherd v. City of Omaha, 194 Neb. 813, 235 N. W. 2d 873, we reversed a decision of the District Court affirming a city personnel board's discharging of a policeman for falsifying an employment application. The evidence showed the policeman Shepherd did falsify a report concerning a back injury 2 years *after* he had been employed, but there was no evidence to substantiate a false employment application, the ground for discharge stated in the dismissal letter. This court said: "The city attempted to show this solely by evidence as to the recurrence of the back trouble 2 years after Shepherd entered its employ. * * *

"While grounds may have existed for Shepherd's discharge, the reason given by the city was not one of them."

The reason listed in the termination letter was not established by competent evidence and other evidence used to justify the termination is not properly before us. The judgment of the District Court should be reversed.

McCOWN and CLINTON, JJ., join in this dissent.